# In the United States Court of Federal Claims

No. 10-201 C

(E-Filed:  May 27, 2010, Under Seal)
(Refiled:  June 2, 2010)[1]

_____
| )
| )
ASSESSMENT AND TRAINING SOLUTIONS | )  Set-Aside for 8(a) Business
CONSULTING CORPORATION, | )  Development Program; Market
| )  Research; 48 C.F.R. § 19.805-1;
Plaintiff, | )  Procurement Integrity Act
| )
v. | )
| )
THE UNITED STATES, | )
| )
Defendant. | )
| )
_____ | )

Richard D. Lieberman, Washington, DC, for plaintiff.  Gabriel D. Soll, Washington, DC, of counsel.

Michael D. Austin, Washington, DC, with whom were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, and Steven Gillingham, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.  Major William Nelson, Contract & Fiscal Law Division, Unites States Army Litigation Center, United States Department of the Army, Arlington, VA, of counsel.

## OPINION AND ORDER

_____

[1] This Opinion was filed under seal on May 27, 2010.  The court requested that if either party believed that the May 27, 2010 Opinion contained protected material that should be redacted before publication, that party shall, by motion filed on or before June 1, 2010, request that such protected material be redacted.  The court has received no motions from either party requesting that the May 27, 2010 Opinion be redacted.  The court therefore publishes the May 27, 2010 Opinion in its entirety.

HEWITT, Chief Judge

Before the court are plaintiff's Complaint (Complaint or Compl.), plaintiff's Motion for Preliminary and Permanent Injunction and Memorandum of Points and Authorities in Support of Plaintiff's Motion for Preliminary and Permanent Injunction (plaintiff's PI Motion or Pl.'s PI Mot.), Defendant's Motion for Judgment upon the Administrative Record (defendant's JAR Motion or Def.'s JAR Mot.), Plaintiff's Opposition to Government's Motion for Judgment upon the Administrative Record[2] (plaintiff's Response or Pl.'s Resp.), Plaintiff's Motion for Judgment on the Administrative Record and Memorandum in Support (plaintiff's JAR Motion or Pl.'s JAR Mot.), Defendant's Opposition to Plaintiff's Motion for Judgment Upon the Administrative Record and Reply to Plaintiff's Opposition to Government's Motion for Judgment upon the Administrative Record (defendant's Response or Def.'s Resp.), and Plaintiff's Reply to Defendant's Opposition to Plaintiff's Motion for Judgment on the Administrative Record (plaintiff's Reply or Pl.'s Reply).

I.      Background[3]

Assessment and Training Solutions Consulting Corporation (ATSCC or plaintiff) provides medical and "other tactical medicine-related" training, including training courses for several Department of Defense agencies.  Compl. ¶ 4.  ATSCC holds contract H92239-09-C-0001, providing medical instruction and support for the period March 1, 2009 through October 31, 2009, for the Joint Special Operations Medical Training Center (JSOMTC) at Fort Bragg, NC.  See id. ¶ 5; Administrative Record (AR) 279.  The contract includes an option to extend for the period November 1, 2009 to October 31, 2010.  Compl. ¶ 5; see AR 279.  The contracting agency, the Department of the Army, U.S. Special Operations Command (agency, defendant, the Army, or the government), did not exercise this option.  See Compl. ¶¶ 5-7; AR 279.  Instead, the agency issued three two-month extensions of the contract, extending the term of the contract until the end of April 2010.  See Compl. ¶ 7; AR 351, 353 (letters from the agency contracting office to ATSCC explaining that the contract was due to expire on February 28, 2010, and that the

---

[2] Several typographical errors in this and subsequent filings are corrected without further notice.

[3] The facts are taken from plaintiff's Complaint (Compl.), Defendant's Motion for Judgment upon the Administrative Record (defendant's JAR Motion or Def.'s JAR Mot.), Plaintiff's Motion for Judgment on the Administrative Record and Memorandum in Support (plaintiff's JAR Motion or Pl.'s JAR Mot.), and the Administrative Record (AR).

government intended to exercise its unilateral right to extend the contract for two more months). ATSCC is continuing to provide training services to JSOMTC under a bridge contract that expires at the end of May 2010. See Def.'s JAR Mot. 4; Plaintiff's Motion to Withdraw 1, Docket Number (Dkt. No.) 25, filed April 30, 2010.

The agency chose not to exercise the one-year option under the contract because the total number of required contract personnel had decreased significantly. Def.'s JAR Mot. 4; AR 196. Because of the change in the scope of the requirement, the agency contracting office decided to conduct market research to determine if two or more 8(a)-certified companies were capable of meeting the agency's needs. AR 196. On July 17, 2009, the agency posted a "Sources Sought" notice on the Federal Business Opportunities website, the online point-of-entry for federal government procurement opportunities, requesting responses from certified 8(a) small businesses.[4] Compl. ¶¶ 8-9; AR 196. The Sources Sought notice made clear that its purpose was to conduct market research rather than to issue a solicitation:

> This is not a Notice of solicitation issuance, but rather a request for information[] (RFI) from industry that will allow the Government to identify interested sources . . . capable of meeting the requirement. The information sought herein is for planning purposes only . . . . This notice is for market research purposes only and is not indicative of a full requirement.

---

[4] The 8(a) program, run by the Small Business Administration (SBA), was established through an amendment to the Small Business Act on October 24, 1978, Pub. L. No. 95-507, § 202, 92 Stat. 1757, 1761 (codified as amended at 15 U.S.C. § 637). The stated purposes of the program include "promot[ing] the business development of small business concerns owned and controlled by socially and economically disadvantaged individuals" and "clarify[ing] and expand[ing] the program for the procurement by the United States of articles, supplies, services, materials, and construction work from small business concerns owned by socially and economically disadvantaged individuals." 15 U.S.C. § 631(f)(2) (2006). The statute defines socially disadvantaged individuals as "those who have been subjected to racial or ethnic prejudice or cultural bias because of their identity as a member of a group without regard to their individual qualities." Id. § 637(a)(5). "Economically disadvantaged individuals are those socially disadvantaged individuals whose ability to compete in the free enterprise system has been impaired due to diminished capital and credit opportunities . . . ." Id. § 637(a)(6)(A). Assessment and Training Solutions Consulting Corporation (ATSCC or plaintiff) qualifies as a small business but is not a certified 8(a) small business. See Motion for Preliminary and Permanent Injunction and Memorandum of Points and Authorities in Support of Plaintiff's Motion for Preliminary and Permanent Injunction 3; Pl.'s JAR Mot. 33.

AR 273.  The Sources Sought notice stated, "The United States Army Special Operations Command (USASOC) is seeking to identify 8(a) certified small business sources capable of providing instruction in the Special Operations Forces (SOF) Medical Courses offered by [JSOMTC]."  AR 274.  The Sources Sought notice further explained, "The Contractor shall teach all classes identified as contractor taught in strict accordance with the Program of Instruction (POI) and lesson plans approved by the government. . . .  Examples of the required support include[] advanced medical instructors, paramedic instructors, veterinarian, logistics, engineering (IT/AV), and personnel/administrative functions."  Id. The agency received responses to the Sources Sought notice from nine companies.  Pl.'s JAR Mot. 5; AR 198.

On September 28, 2009, the agency Contracting Officer e-mailed the Small Business Administration (SBA), stating that the agency "would like to offer the subject requirement to the SBA for consideration under the 8(a) program."  AR 198.  The e-mail explained that the agency had received nine responses--four of which were certified 8(a) small businesses--"but only one firm, Decypher, demonstrated a capability to perform the required services and had relevant past performance."  AR 198, 200.  The Contracting Officer requested the SBA's input on whether the agency "should proceed as a competitive 8(a) or as an exception to the 8(a) . . . sole source award threshold."[5]  Id.  In

---

[5] Generally, under the 8(a) program, a contract with a value below the price threshold is awarded on a sole-source basis while a contract with a value above the price threshold is competed.  See 13 C.F.R. § 124.506 (2010); 48 C.F.R. § 19.805-1 (2009).  The requirement at issue in this case had an estimated total value of approximately $8.9 million.  AR 193.  Because the value of the contract exceeded the applicable $3.5 million price threshold, the contract would have to be competed rather than awarded on a sole-source basis unless one of the exceptions were met.  See 13 C.F.R. § 124.506(a)(2)(ii), (b), (d).

The 8(a) statute provides:  "A contract opportunity offered for award pursuant to this subsection shall be awarded on the basis of competition restricted to eligible Program Participants if . . . there is a reasonable expectation that at least two eligible Program Participants will submit offers and that award can be made at a fair market price, and . . . the anticipated award price of the contract (including options) will exceed [the relevant price threshold]."  15 U.S.C. § 637(a)(1)(D)(i) (2006).  SBA regulations parallel the statute and provide further guidance:

> A procurement offered and accepted for the 8(a) [Business Development (BD)] program must be competed among eligible Participants if:
>
> (i) There is a reasonable expectation that at least two eligible Participants will submit offers at a fair market price;

the market research documentation attached to her e-mail to the SBA, the Contracting Officer also explained that she had conducted additional (to the Sources Sought notice) market research to determine if the training services could be procured as commercial items and to determine the availability of commercial sources capable of meeting the requirements.  AR 199.  The additional market research consisted of a search on the SBA Dynamic Small Business website, a search of the Central Contractor Registration database, and a general Internet search.  AR 199-200.  Based on the submissions received in response to the Sources Sought notice and the determination that only Decypher had the capabilities to meet the contract requirements, the Contracting Officer indicated the agency's intent to offer the contract as a sole-source award, as an exception under Federal Acquisition Regulations (FAR) 19.805-1(b)(1) because the contract value exceeded the competitive threshold.  AR 201; see 13 C.F.R. § 124.506 (2010); 48 C.F.R. § 19.805-1(b)(1) (2009).

On October 2, 2009, the SBA representative responded by e-mailing to the Contracting Officer the name of another 8(a) company, CSBS, that had expressed an interest in providing the requested services in response to the SBA representative's inquiry.  AR 202-03.  The SBA representative stated his belief that CSBS was "capable to fulfill [the agency's] requirements" and thanked the Contracting Officer for providing him with "an opportunity to participate in [the agency's] search for sources."  AR 202.  On October 5, 2009, the Contracting Officer e-mailed the SBA representative, stating that "[t]he proposed set-aside is competitive 8(a)."  AR 205, 208-09.  The Small Business Coordination Record, dated October 5, 2009, identifies the requirement as a competitive

---

(ii) The anticipated award price of the contract, including options, will exceed $5,500,000 for contracts assigned manufacturing [Standard Industrial Classification] codes and $3,500,000 for all other contracts; and

(iii) The requirement has not been accepted by SBA for award as a sole source 8(a) procurement on behalf of a tribally-owned or [Alaska Native Corporation (ANC)]-owned concern.

13 C.F.R. § 124.506(a)(2).  SBA regulations permit a contract that has a value above the price threshold to be offered on a sole source basis to an 8(a) small business "owned and controlled by an Indian tribe or an ANC . . . if SBA has not accepted the requirement into the 8(a) BD program as a competitive procurement."  Id. § 124.506(b).  SBA regulations also provide that "[w]here a contract opportunity exceeds the applicable threshold amount and there is not a reasonable expectation that at least two eligible 8(a) Participants will submit offers at a fair price, the [Associate Administrator, Office of Business Development] may accept the requirement for a sole source 8(a) award if he or she determines that an eligible Participant in the 8(a) portfolio is capable of performing the requirement at a fair price."  Id. § 124.506(d).

8(a) set-aside with an estimated total value of approximately $8.9 million.  AR 193.  On October 8, 2009, the agency posted a "Presolicitation Notice," which advised that the competitive procurement would be restricted to 8(a) small businesses and provided the same description of the required training services as that given in the Sources Sought notice.  Compl. ¶¶ 12-13.

On December 21, 2009, the agency posted Solicitation H92239-10-R-0001 as a Request for Proposals (RFP), which included a detailed Performance Work Statement (PWS).  See Compl. ¶ 14; Pl.'s JAR Mot. 9.  Plaintiff asserts that "[t]he work described by the RFP is the same or very similar to the work being performed by ATSCC under its current contract . . . with JSOMTC."  Pl.'s JAR Mot. 10.  Plaintiff asserts that the RFP specified various certifications and training that would be required for certain positions filled under the contract--namely the positions of Advanced Medical Instructors, Special Operations Forces (SOF) Paramedic Instructors and Senior Instructor Manager.  Id.  Specifically, the RFP required that Advanced Medical Instructors "[m]ust be graduates of a World Health Organization accredited medical school or American Medical Association/American Academy of Physician Assistants accredited physician assistant program," "must have passed the United States Medical Licensing Examination or National Committee on the Certification of Physician Assistants certification test or equivalent nursing licensure exam," and must have "at least one year of experience as a member of a [United States Special Operations Command (USSOCOM)] deployable Special Operations unit or at least one year of experience as an instructor in a USSOCOM medical pipeline court."  AR 13.  The RFP required that SOF Paramedic Instructors provided under the contract must "complete an approved Instructor Trainer Course," maintain currency of the five specific credentials listed in the RFP, and have at least one year of experience in one of four listed positions.  Id.

On January 7, 2010, the contracting office posted answers to certain questions raised by contractors about the RFP.  Compl. ¶ 20.  The subject of one question and answer is a source of particular contention between the parties.  The question asked, "Will contractors be given the names and contact information for the current . . . instructors?"  Id.; see AR 73.  The agency responded:  "The government will post 'contractor information' for recruitment purposes visible to current employees.  Submissions shall be sent to the Contracting Office and will be forwarded to the Contracting Officer's Representative for posting in a public area.  All meetings shall be on the employee's time at an off-site location."  Compl. ¶ 20; see AR 73.  On January 11, 2010, the agency issued Amendment 0001 to the RFP, clarifying the information it had previously posted in response to contractor questions.  AR 71; Compl. ¶ 21.  Amendment 0001 included the statement quoted above regarding the posting of contractor information and further stated, "Please be advised that the Government will not be involved or offer assistance in any

recruitment actions or procedures for any offerors and will not provide any guidance or instruction on how this should be accomplished." AR 71.

On January 12 and 13, 2010, several ATSCC employees received e-mails from three different individuals representing companies that intended to bid on the RFP and that were seeking qualified personnel. See Compl. ¶¶ 22-25. The e-mails from one of the individuals, Mr. James C. Sharp, identified Chief Warrant Officer 2, Jan P. Cervantes (CW2 Cervantes) as the source of the employees' names. See id. ¶¶ 23-24; Def.'s JAR Mot. 10. CW2 Cervantes is "currently stationed at the U.S. Army John F. Kennedy Special Warfare Center and School under the Department of Training Directorate, which is the parent command to the JSOMTC." Id. ¶ 24. In response to the e-mails received by its employees, ATSCC sent a letter to the Contracting Officer on January 13, 2010, stating its belief that Amendment 0001 and the procedures it announced violated the Procurement Integrity Act (PIA), 41 U.S.C. § 423 (2006). Compl. ¶ 26. The Contracting Officer replied on January 13, 2010, denying any wrongdoing, and ATSCC subsequently forwarded its concerns to the agency's Head of Contracting and the General Counsel of the Department of Defense. Id. ¶ 27.

On January 19, 2010, before the RFP period closed, ATSCC filed a protest with the Government Accountability Office (GAO), asserting that the set-aside for 8(a) businesses was unreasonable and that violations of the PIA had occurred. Id. ¶ 29. GAO dismissed the PIA protest ground on February 9, 2010, because the Army was conducting an investigation of the alleged violations and because ATSCC did not oppose the agency's motion requesting dismissal. AR 375; see Compl. ¶ 30. On March 26, 2010, GAO, citing 4 C.F.R. § 21.5(b)(3) (2009), dismissed the 8(a) protest ground as not within its jurisdiction. AR 372-74; Compl. ¶ 31. ATSCC filed its Complaint in this court on April 5, 2010. Compl. 1.

II.    Legal Standards

    A.    Bid Protest Jurisdiction

Section 1491(b)(1) of title 28 of the United States Code provides the United States Court of Federal Claims (Court of Federal Claims) with jurisdiction "to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement," regardless of "whether suit is instituted before or after the contract is awarded." 28 U.S.C. § 1491(b)(1) (2006). The court reviews a bid protest action under the standards set forth in the Administrative Procedure Act (APA) at 5

U.S.C. § 706. 28 U.S.C. § 1491(b)(4) (stating that 5 U.S.C. § 706 provides the standards for judicial review); NVT Techs., Inc. v. United States, 370 F.3d 1153, 1159 (Fed. Cir. 2004). The APA provides that an agency's decision is to be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); see Galen Med. Assocs., Inc. v. United States, 369 F.3d 1324, 1329 (Fed. Cir. 2004); Impresa Construzioni Geom. Domenico Garufi v. United States (Impresa), 238 F.3d 1324, 1332 (Fed. Cir. 2001).

To come within the § 1491(b)(1) bid protest jurisdiction of the Court of Federal Claims as an "interested party," a plaintiff must establish that it "(1) is an actual or prospective bidder and (2) possesses the requisite direct economic interest." Weeks Marine, Inc. v. United States (Weeks Marine), 575 F.3d 1352, 1359 (Fed. Cir. 2009) (brackets omitted); Rex Serv. Corp. v. United States, 448 F.3d 1305, 1307 (Fed. Cir. 2006). To prove a direct economic interest as a putative prospective bidder, a plaintiff must establish that it had a "substantial chance" of being awarded the contract. Weeks Marine, 575 F.3d at 1359. "[A] bid protester must have a substantial chance of receiving an award in order to have an economic interest in it and therefore standing to file a bid protest." Labatt Food Serv., Inc. v. United States, 577 F.3d 1375, 1379 (Fed. Cir. 2009) (citing Info. Tech. & Applications Corp. v. United States (Info. Tech.), 316 F.3d 1312, 1319 (Fed. Cir. 2003) ("In order to establish standing, [the protester] must show that it is an actual or prospective bidder . . . whose direct economic interest would be affected by the award of the contract or by failure to award the contract . . . .")).

The court is satisfied that plaintiff has standing to bring this bid protest. See Pl.'s PI Mot. 11-13 (arguing that plaintiff has met its burden of establishing that it is an "interested party" and has been prejudiced by the errors alleged); Def.'s JAR Mot. 13 n.2 (acknowledging that "ATSCC would qualify as an interested party for standing purposes" because, if ATSCC is successful in challenging the 8(a) set-aside decision, it could compete under a subsequent small business set-aside or full and open competition). ATSCC was not an "actual bidder" because it did not have the opportunity to bid. Once the agency made the decision to set aside the contract under the 8(a) program, ATSCC was prevented from competing for the contract. ATSCC has established that it was the incumbent contractor providing the medical training services at issue and that it would have competed for the award had the agency competed the contract to small businesses or held an unrestricted procurement. Compl. ¶¶ 4, 15, 33-35; Pl.'s PI Mot. 2-3, 12-13, 21; Pl.'s JAR Mot. 29, 33. As a small business and the incumbent contractor, ATSCC has established that it had a "substantial chance" of receiving the award but for the alleged error in the procurement process. Compl. ¶¶ 5, 15, 28, 33-35, 44; Pl.'s PI Mot. 2-3, 12-13, 21; Pl.'s JAR Mot. 33. If plaintiff's bid protest is sustained because the procurement was not in accordance with law and the government is obligated to compete the contract

8

to small businesses or to hold an unrestricted procurement, plaintiff could compete for the contract. Plaintiff is therefore a prospective bidder. Under these circumstances, plaintiff has a "substantial chance" of receiving the award, an economic interest, and standing to challenge the award. See Impresa, 238 F.3d at 1334 (citing Alfa Laval Separation, Inc. v. United States (Alfa Laval), 175 F.3d 1365, 1367 (Fed. Cir. 1999)). In other words, ATSCC has "a definite economic stake in the solicitation being carried out in accordance with applicable laws and regulations." See Weeks Marine, 575 F.3d at 1362.

B.      Motion for Judgment upon the Administrative Record

Rule 52.1 of the Rules of the United States Court of Federal Claims (RCFC) provides for judgment upon the administrative record. See RCFC 52.1. A motion for judgment upon the administrative record is distinguishable from a motion for summary judgment. Bannum, Inc. v. United States (Bannum), 404 F.3d 1346, 1355 (Fed. Cir. 2005); see RCFC 52.1 rules committee note ("Summary judgment standards are not pertinent to judicial review upon an administrative record."). The standards and criteria that govern the court's review of agency decisions in response to a motion for judgment on the administrative record under RCFC 52.1 will vary depending upon the specific law to be applied in the particular case. RCFC 52.1 rules committee note.

When challenging a procurement on the ground of a statutory or regulatory violation, the protester "'must show a clear and prejudicial violation of applicable statutes or regulations.'" Banknote Corp. of Am. v. United States, 365 F.3d 1345, 1351 (Fed. Cir. 2004) (quoting Impresa, 238 F.3d at 1333). If an agency's decision is found to have been "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" pursuant to 5 U.S.C. § 706(2)(A), a protestor must also show that the error was significantly prejudicial. Alfa Laval, 175 F.3d at 1367. "'To establish prejudice, a protester is not required to show that but for the alleged error, the protester would have been awarded the contract.'" Id. (quoting Data General Corp. v. Johnson, 78 F.3d 1556, 1562 (Fed. Cir. 1996)). Instead, a protester "must show that there was a 'substantial chance' it would have received the contract award but for the errors." Bannum, 404 F.3d at 1353 (citing Info. Tech., 316 F.3d at 1319); see Alfa Laval, 175 F.3d at 1367.

III.    Discussion

Plaintiff includes four counts in its Complaint: "Improper Set-Aside," "Improper Market Survey," "Improper Assistance to Contractors" and "Violation of the Procurement Integrity Act." Compl. 8-10. The first two counts relate to whether the agency had a rational basis for limiting competition for the contract to 8(a) businesses, based on the market survey that was conducted, see Compl. ¶¶ 32-39, that is, whether the Contracting

Officer had "a reasonable expectation that at least two eligible and responsible 8(a) firms will submit offers and that award can be made at a fair market price," 48 C.F.R. § 19.805-1(a)(1). The second two counts involve alleged violations of the Procurement Integrity Act and regulations related to procurement integrity--namely the provision of contractor information under Amendment 0001 to the RFP and the release of ATSCC employee names and contact information from an unknown source. See Compl. ¶¶ 26-29, 40-44; Pl.'s JAR Mot. 30-32. The court discusses these in turn below.

A.    The 8(a) Set-Aside Decision[6]

Plaintiff argues that the agency's decision to set aside the medical training services solicitation as a competitive 8(a) procurement lacked a rational basis. Pl.'s JAR Mot. 16-18. According to plaintiff, there are two reasons why "it is clear that no adequate market survey or other research was conducted by the Contracting Officer to have permitted her to reasonably conclude that she would receive two or more offers from qualified and responsible 8(a) firms": (1) "the materials furnished by the Contracting Officer to inform potential offerors was not detailed enough to permit reasonable responses" and (2) "the responses received, as well as other input, do not support the decision to set aside the procurement for 8(a) competition." Id. at 18. Plaintiff further argues that the set-aside decision was not made in accordance with SBA regulations, the FAR, and the interagency partnership agreement between the Department of Defense and the SBA. Id. at 27-29.

Defendant contends that "the Government acted rationally and complied with all statutory and regulatory provisions when it decided to limit the acquisition of medical trainers to 8(a) certified small businesses." Def.'s JAR Mot. 3. Defendant emphasizes that agencies and contracting officers are entitled to exercise discretion during the procurement process. Id. at 15 (citing Impresa, 238 F.3d at 1333). According to defendant, the Contracting Officer's conclusion that there were two or more 8(a) firms capable of performing the contract was reasonable and is supported by the AR. Id. at 16.

---

[6] Because plaintiff is challenging the October 2009 decision to set aside the requirement for a competitive 8(a) award, the court does not examine the proposals received by the agency in January 2010 in response to the Request for Proposals. The court agrees with plaintiff that it is inappropriate to examine proposals not yet before the agency at the time the agency was making its set-aside decision. See Plaintiff's Reply to Defendant's Opposition to Plaintiff's Motion for Judgment on the Administrative Record 13-14. Defendant offered the proposals as amendments to the AR. Defendant's Motion Seeking Leave to Correct and Amend the Administrative Record 1-2, Dkt. No. 26, filed April 30, 2010. While the court permitted the filing of the proposals, see Order of May 3, 2010, the court does not consider the proposals to be a part of the AR for the purpose of this pre-award protest and does not consider them in reaching its decision.

1.      Market Research as Basis for 8(a) Set-Aside Decision

Under FAR 10.001, agencies must "[c]onduct market research appropriate to the circumstances" before taking certain actions, including "[b]efore developing new requirements documents for an acquisition" and before soliciting offers.  48 C.F.R. § 10.001(a)(2) (2009).  FAR 10.001 requires agencies to use the results of the market research to "[d]etermine if sources capable of satisfying the agency's requirements exist" and further directs that "[w]hen conducting market research, agencies should not request potential sources to submit more than the minimum information necessary."  Id. § 10.001(a)(3)(i), (b).  FAR 10.002 states that "[a]cquisitions begin with a description of the Government's needs stated in terms sufficient to allow conduct of market research," and that "[t]he extent of market research will vary, depending on such factors as urgency, estimated dollar value, complexity, and past experience."  Id. § 10.002(a), (b)(1).

In this case, the agency posted a "Sources Sought" notice on the Federal Business Opportunities website, which made clear that its purpose was to conduct market research rather than to issue a solicitation, that the information it sought was for planning purposes only and that the posting was not indicative of a full requirement.  See AR 273.  The Sources Sought notice stated, "The United States Army Special Operations Command (USASOC) is seeking to identify 8(a) certified small business sources capable of providing instruction in the Special Operations Forces (SOF) Medical Courses offered by [JSOMTC]."  AR 274.  The Sources Sought notice further explained, "The Contractor shall teach all classes identified as contractor taught in strict accordance with the Program of Instruction (POI) and lesson plans approved by the government. . . .  Examples of the required support include[] advanced medical instructors, paramedic instructors, veterinarian, logistics, engineering (IT/AV), and personnel/administrative functions."  Id. The Contracting Officer conducted additional market research consisting of a search on the SBA Dynamic Small Business website, a search of the Central Contractor Registration database, and a general Internet search.  AR 199-200.  The Contracting Officer also contacted the SBA representative, who provided the name of an additional company and stated that he believed the company to be capable of fulfilling the requirement.  AR 202-03.

Plaintiff argues that "[t]he Sources Sought notice contained a minimal suggestion of the [a]gency's needs," and that "[t]he description of the requirements was so minimal as to not permit potential offerors to respond to the Sources Sought notice in a manner that would permit the Contracting Officer to make a rational decision."  Pl.'s JAR Mot. 18.  Plaintiff also contends that the responses to the Sources Sought notice that the Contracting Officer received did not provide reasonable support for the set-aside decision

because, based on their responses, the 8(a) companies were not capable of performing the contract.  Id. at 20-21, 27.  Plaintiff acknowledges that "procurement officials are granted wide latitude and discretion in conducting market research and selecting contractors to perform the work, particularly contracts under the 8(a) program."  Id. at 19 (citing Data Transformation Corp. v. United States, 13 Cl. Ct. 165, 173 (1987)).

Defendant asserts that the Sources Sought notice "set forth the essential elements of the planned work procurement," including a general description of the type of work and personnel that would be required under the RFP.  Def.'s JAR Mot. 18.  Defendant argues that the Contracting Officer needed only a reasonable expectation that two or more eligible and responsible 8(a) companies would submit offers in response to the RFP and that the Sources Sought notice was not intended to qualify Decypher, or any other company, for the procurement.  Def.'s Resp. 5.  Defendant contends that the market research--the responses to the Sources Sought notice, the search on the SBA Dynamic Small Business website, a search of the Central Contractor Registration database, and a general Internet search--along with the assistance from the SBA representative, permitted the Contracting Officer to conclude that there was a reasonable expectation of receiving two or more offers from 8(a)-certified companies.  Id. at 4.

The court agrees with defendant that the Contracting Officer had discretion under the relevant regulations to conduct market research "appropriate to the circumstances."  See 48 C.F.R. § 10.001(a); Def.'s Resp. 2, 4-5.  The regulations note that the extent of the market research will vary depending on a number of factors and direct agencies not to request "more than the minimum information necessary" when conducting market research.  48 C.F.R. §§ 10.001(b), 10.002(b)(1).  Given this regulatory guidance and the discretion afforded agencies and contracting officers in making such procurement-related determinations, the court cannot conclude that the market research conducted by the Contracting Officer was inadequate nor that the Contracting Officer's 8(a) set-aside decision was unreasonable.  The agency's 8(a) set-aside decision was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

2.      Regulations Governing 8(a) Set-Aside Decisions

Plaintiff argues that "the regulations and agreement between the agencies clearly show that there are prescribed procedures for setting aside a procurement for competition amongst 8(a) companies, and that those regulations were not followed by the [a]gency in the instant procurement."  Pl.'s JAR Mot. 27.  Plaintiff points out differences in the administrative procedures for competitive 8(a) awards and those for sole-source 8(a) awards--for example, which SBA district office is to receive the requirements from the agency.  Pl.'s Resp. 20; Pl.'s JAR Mot. 28-29.  Plaintiff contends that "[b]ecause the

regulatory scheme demonstrates that the offering and acceptance of a requirement into the 8(a) program is different depending on whether the procurement is to be a sole source or competitive procurement, it is clear that the decision to place a procurement on one or the other track is challengeable under the APA." Pl.'s JAR Mot. 29.  In order to succeed in such a challenge, brought on the basis that the procurement involved a violation of regulation or procedure, plaintiff must show "a clear and prejudicial violation of applicable statutes or regulations."  See Impresa, 238 F.3d at 1332-33 (internal quotation marks omitted).

Defendant asserts that plaintiff's argument that "8(a) procurements are processed differently depending on whether they are to be awarded competitively or on a sole-source basis . . . is a distinction without significance." Def.'s Resp. 7.  According to defendant, "The fact that the administrative procedures vary between a competitive and sole-source procurement does not change the fact that, had the Army and SBA determined that a competitive process was not warranted in this case, they simply could have decided to award this contract on a sole-source basis and follow the administrative procedures applicable to a sole-source award."  Id.  Defendant contends that ATSCC cannot establish competitive harm by relying on any alleged violation of FAR 19.805-1. Id.

FAR 19.805-1 provides that, under the 8(a) program, an acquisition exceeding the competitive threshold must be competed if there is a reasonable expectation that at least two eligible and responsible 8(a) firms will submit offers at a fair market price and the acquisition may be awarded on a sole-source basis if such a reasonable expectation does not exist:

(a) Except as provided in paragraph (b) of this subsection, an acquisition offered to the SBA under the 8(a) Program shall be awarded on the basis of competition limited to eligible 8(a) firms if--

(1) There is a reasonable expectation that at least two eligible and responsible 8(a) firms will submit offers and that award can be made at a fair market price; and

(2) The anticipated total value of the contract, including options, will exceed $5.5 million for acquisitions assigned manufacturing North American Industry Classification System (NAICS) codes and $3.5 million for all other acquisitions.

(b) Where an acquisition exceeds the competitive threshold, the SBA may accept the requirement for a sole source 8(a) award if--

> (1) There is not a reasonable expectation that at least two eligible and responsible 8(a) firms will submit offers at a fair market price; or

> (2) SBA accepts the requirement on behalf of a concern owned by an Indian tribe or an Alaska Native Corporation.

48 C.F.R. § 19.805-1 (emphasis added).

Plaintiff insists that the language of FAR 19.805-1 "unquestionably implies that there are two separate 'offers,' one for sole source 8(a) awards, and one for competitive 8(a)" and that "[a]n agency does not comply with SBA regulations merely by saying . . . that a single offering may be used for both competitive and sole source acquisitions." Pl.'s Resp. 20, 21 (emphasis omitted). In the court's view, FAR 19.805-1 does not provide for two separate offers but rather directs how an acquisition is to be awarded once it is "offered to the SBA under the 8(a) Program."[7]  See 48 C.F.R. § 19.805-1(a); AR 373 (GAO decision) ("Here, the FAR provision on which the protest is based does not relate to the decision whether to place a requirement in the 8(a) program; rather, it relates to how a procurement is to be conducted (i.e., competitive or sole-source), after it has been placed in the 8(a) program."). The essence of plaintiff's argument appears to be that the Contracting Officer did not have a rational basis for concluding that there was a reasonable expectation that two eligible and responsible firms would submit offers at a

---

[7] Plaintiff cites to Federal Acquisition Regulations (FAR) 19.803 for the proposition that procurements may be identified for inclusion in the 8(a) program in one of three ways:  the SBA may identify an 8(a) business to an agency, the SBA may identify a particular procurement that matches the capabilities of an 8(a) business, or the agency may conduct an independent evaluation to identify procurements appropriate for the 8(a) program.  Pl.'s JAR Mot. 27-28. FAR 19.803(c) provides:  "Where agencies independently, or through the self marketing efforts of an 8(a) firm, identify a requirement for the 8(a) Program, they may offer on behalf of a specific 8(a) firm, for the 8(a) Program in general, or for 8(a) competition."  48 C.F.R. § 19.803(c).  In this case, it appears that, in deciding not to exercise the option year under the contract with ATSCC, the contracting office re-examined the scope of the requirement and independently considered whether set-aside for the 8(a) program would be appropriate before conducting market research and contacting the SBA for input.  See AR 196; see also AR 198 (e-mail from Contracting Officer to SBA representative stating:  "[The contracting office] would like to offer the subject requirement to the SBA for consideration under the 8(a) program. . . . [W]e would like to get your input on whether we should proceed as a competitive 8(a) or as an exception to the 8(a) . . . sole source award threshold.").

fair market price and that the Contracting Officer therefore violated regulations by setting aside the requirement for 8(a) competition.  See Pl.'s JAR Mot. 2-3.  Because the contracting agency had already determined that it would offer the requirement to the SBA for the 8(a) program, the agency's alternative to a competitive 8(a) award would be a sole-source 8(a) award.  See AR 198; see also 48 C.F.R. § 19.805-1(b) (stating that the SBA may accept a requirement that exceeds the competitive threshold for a sole source 8(a) award if there is not a reasonable expectation that at least two eligible and responsible 8(a) firms will submit offers at a fair market price).  At the time of the set-aside, ATSCC was not a certified 8(a) business and was ineligible for either a competitive or a sole-source 8(a) award.  See Pl.'s PI Mot. 3; Pl.'s JAR Mot. 33.  The government therefore correctly contends that ATSCC cannot rely on any alleged violation of FAR 19.805-1, or other regulations relating to the administrative processing of competitive and sole-source 8(a) awards, to establish competitive harm.  See Def.'s Resp. 7.  Plaintiff has failed to show "a clear and prejudicial violation of applicable statutes or regulations."  See Impresa, 238 F.3d at 1332-33 (internal quotation marks omitted).

B.      Alleged Procurement Integrity Act Violations

Plaintiff alleges that apparent violations of the Procurement Integrity Act (PIA) have tainted the procurement at issue.  Pl.'s JAR Mot. 30-32.  Plaintiff asserts that it has met the requirements of the FAR and GAO's guiding regulations by "alerting the Contracting Officer of the suspected violations as they were known, and later advising the Head of the Contracting Activity as well as the Department of Defense Ethics Officer of the suspected violations after receiving a response from the Contracting Officer.  Id. at 30; see 4 C.F.R. § 21.5(d) (2010) (requiring that, in order to obtain GAO review of an alleged PIA violation, the protester must first "report the information it believed constituted evidence of the offense to the Federal agency responsible for the procurement within 14 days after the protester first discovered the possible violation").  Plaintiff further contends that it has been prejudiced by the alleged PIA violations because "no other potential offeror had the required personnel, or ability to recruit personnel with the requisite qualifications" absent the release of ATSCC employee information to prospective contractors.  Pl.'s JAR Mot. 32; see Pl.'s Resp. 24; Pl.'s Reply 16.

1.      Amendment 0001 to the Request for Proposals

In its Complaint, plaintiff asserted that ATSCC sent a letter dated January 13, 2010, to the Contracting Officer stating that "ATSCC believed the statements of Amendment 0001 and the procedures it announced to be in violation of the PIA" and requesting that the government "cease efforts to identify personnel to potential bidders on this contract."  Compl. ¶ 26.  In plaintiff's Response, JAR Motion and Reply, its

15

argument focuses not on the posting of contractor information pursuant to Amendment 0001, but rather on the alleged release, from an unknown source, of information about ATSCC employees which enabled competing companies to contact plaintiff's employees in an attempt to recruit them.  Pl.'s Resp. 22-24; Pl.'s JAR Mot. 30-32; Pl.'s Reply 14-16; see Def.'s Resp. 8 (stating that ATSCC does not refer to Amendment 0001 in its Response after raising it as a possible basis for alleging a PIA violation in its Complaint).

The PIA prohibits government personnel from "knowingly disclos[ing] contractor bid or proposal information or source selection information before the award of a Federal agency procurement contract to which the information relates."  41 U.S.C. § 423(a).  The PIA defines the term "contractor bid or proposal information" as certain types of information "submitted to a Federal agency as part of or in connection with a bid or proposal to enter into a Federal agency procurement contract, if that information has not been previously made available to the public or disclosed publicly."  Id. § 423(f)(1).  The types of information enumerated in the PIA include cost or pricing data, indirect costs and direct labor rates, "[p]roprietary information about manufacturing processes, operations, or techniques marked by the contractor in accordance with applicable law or regulation," and "[i]nformation marked by the contractor as 'contractor bid or proposal information,' in accordance with applicable law or regulation."  Id.  Amendment 0001 provided that the prospective contractors were to submit information--presumably contact and other recruitment-related information--to the contracting office and the Contracting Officer's Representative would then post "'contractor information' for recruitment purposes visible to current employees . . . in a public area."  See AR 71.  This "contractor information" described in Amendment 0001 was to be submitted by the contractors themselves for public posting and does not fall within the definition of "contractor bid or proposal information" contained in 41 U.S.C. § 423(f)(1), disclosure of which is prohibited by the PIA.

It appears that plaintiff might have believed, at the time of its January 2010 letter and the filing of its Complaint, that the Amendment 0001 process resulted in the release of its employee information.  See Compl. ¶ 26; see also Def.'s JAR Mot. 21 (interpreting plaintiff's position regarding Amendment 0001 as alleging that the Amendment 0001 process caused the release of current ATSCC employees' names in violation of the PIA). In filings subsequent to its Complaint, plaintiff does not mention Amendment 0001 in relation to the alleged PIA violations but rather focuses its arguments on the actions of CW2 Cervantes and possible actions taken by the contracting office or another unknown source.  See Pl.'s Resp. 22-24; Pl.'s JAR Mot. 30-32; Pl.'s Reply 14-16.

   2.   The Alleged Release of ATSCC Employee Information

16

Plaintiff argues that the Army investigation of CW2 Cervantes was incomplete and did not fully address its allegations of PIA violations because the investigation focused only on CW2 Cervantes and not on staff members within the contracting office.  Pl.'s JAR Mot. 31; Pl.'s Reply 15-16.  Plaintiff further argues that "the qualifications of the [ATSCC] personnel were known, or were available to the Contracting Officer as the award was made based partially on a technical proposal which included several of their resumes."  Pl.'s JAR Mot. 31.  Plaintiff acknowledges that the resumes did not contain the names of the employees, Pl.'s Resp. 23 n.3, but asserts that the resumes "included restrictive legends per FAR 52.215-1(e)," Pl.'s JAR Mot. 31.  Plaintiff argues that by including the proper legend on the title page of its technical proposal and on each page of restricted data, including the resumes of its employees, such information becomes subject to the PIA and may not be disclosed.  Pl.'s Resp. 23 (citing FAR 52.215-1(e)); see 41 U.S.C. § 423(f)(1) (defining "contractor bid or proposal information" to include "[i]nformation marked by the contractor as 'contractor bid or proposal information,' in accordance with applicable law or regulation").  Plaintiff acknowledges that it does not know who released the names of ATSCC employees, how the information was released, or how the e-mail addresses of the ATSCC employees were obtained.  Pl.'s Resp. 24; see Pl.'s Reply 16.

Defendant responds that the evidence is unclear on whether CW2 Cervantes provided ATSCC employee names to his teaming partner Mr. James C. Sharp, or to anyone else, and further, that such disclosure, if it did occur, is not a PIA violation.  Def.'s JAR Mot. 10-11, 22.  Defendant contends, and plaintiff does not dispute, that "[a]nyone with access to the training facilities could have gotten and relayed the names and e[-]mail addresses of ATSCC's trainers."  Id. at 23.  With regard to plaintiff's allegation that the Contracting Officer disclosed information about ATSCC employees and their qualifications, defendant states that plaintiff bears the burden of overcoming, with clear and convincing evidence, the presumption that government officials perform their duties properly.  Def.'s Resp. 8 (citing Kalvar Corp. v. United States, 543 F.2d 1298, 1301-1302 (Ct. Cl. 1976) and Am-Pro Protective Agency, Inc. v. United States, 281 F.3d 1234, 1240 (Fed. Cir. 2002)).  Defendant further contends that "even assuming that the names and addresses of current employees are confidential, which they are not, ATSCC cannot meet it[s] burden to demonstrate that any Government personnel committed a PIA violation."  Id. at 9.

a.    CW2 Cervantes

The Army conducted an investigation (Army Regulation 15-6 or Army Reg. 15-6 investigation) into CW2 Cervantes' actions after ATSCC filed its protest with GAO

alleging PIA violations.[8]  AR 281-346.  The investigator's report found that CW2 Cervantes was engaged in outside employment as President/CEO of Centurion Advanced Security Group (CASG) without having received the necessary preauthorization.  AR 287.  The Army Reg. 15-6 report stated:

> There is no physical evidence that CW2 Cervantes personally transferred information that he learned in the course of his federal employment to a prime contractor he was teamed with, Logistics & Technology Services, Inc[.] (LTS), who submitted a proposal to the [JSOMTC] training contract. However, the preponderance of the evidence is that his company, CASG, did transfer information to LTS.

Id.  The investigator conducted a telephonic interview with Mr. James C. Sharp, President of LTS, who had contacted ATSCC employees referencing "Mr. JP Cervantes" as the source of his information.  AR 315-16.  Mr. Sharp stated that he did not know CW2 Cervantes was on active duty, that CW2 Cervantes represented himself as President of CASG when they spoke by telephone, and that he had never met CW2 Cervantes in person or exchanged e-mails with him.  AR 288, 315-16.  Mr. Sharp denied receiving "any names, resumes, or any contact information on any potential employees or current contractors or these four specific individuals," all of whom were ATSCC employees, from CW2 Cervantes.  AR 315; see AR 288.

Mr. Sharp instead identified Mr. Jesse Boyington, "a retired 18D [Special Operations Medical Sergeant] and current employee of [CASG]," as the source of the names and e-mail addresses belonging to ATSCC employees.  AR 315; see AR 288.  Mr. Sharp informed the investigator that he had used CW2 Cervantes' name in the e-mails he

---

[8] The Army Regulation 15-6 investigation report is included in the AR at tab 33, pages 281-346.  In the index to the AR, the government notes that the legal review of the investigation report has been omitted.  The government claims attorney-client privilege for the legal review documents.  See Defendant's Response in Part to the Court's Order Dated April 12, 2010 and Defendant's Motion in Part for an Enlargement of Time, Dkt. No. 12, filed April 13, 2010.  The parties agreed that the government would submit the legal review documents to the court for in camera review, and that the court would determine the relevance of such documents in light of the parties' briefing on the merits of the case.  See Order of April 14, 2010, Dkt. No. 14.  The court has reviewed the documents in camera and found them not relevant to the determination of the issues in this case.  The court has delivered a paper copy of the legal review documents submitted for in camera review to the Clerk of Court to be retained by the Clerk of Court for delivery to the United States Court of Appeals for the Federal Circuit in case of an appeal of the court's judgment in this matter or, if no appeal if filed, to be destroyed.

sent to ATSCC employees to reference the company CASG--"[i]n other words to open the door to these potential employees by using Mr. Cervantes' name and company not unlike providing bona fides." AR 316. In his report, the investigator concluded that Mr. Sharp "received names of trainer personnel from some source, either CW2 Cervantes as indicated in his e[-]mails or from CASG employee Jesse Boyington" and that Mr. Sharp attempted to recruit them. AR 288. The investigator also concluded that CW2 Cervantes was engaged in unauthorized outside employment and had formed a teaming arrangement with LTS. AR 287. Nowhere in his report did the investigating officer find that a PIA violation had occurred. See AR 287-346.

The PIA states: "A person described in paragraph (2) shall not, other than as provided by law, knowingly disclose contractor bid or proposal information or source selection information before the award of a Federal agency procurement contract to which the information relates." 41 U.S.C. § 423(a)(1). Paragraph 2, in turn, specifies that paragraph 1 applies to any person who:

> (A) is a present or former official of the United States, or a person who is acting or has acted for or on behalf of, or who is advising or has advised the United States with respect to, a Federal agency procurement; and

> (B) by virtue of that office, employment, or relationship has or had access to contractor bid or proposal information or source selection information.

Id. § 423(a)(2). The PIA defines the term "contractor bid or proposal information" as any of the enumerated types of information "submitted to a Federal agency as part of or in connection with a bid or proposal to enter into a Federal agency procurement contract, if that information has not been previously made available to the public or disclosed publicly." Id. § 423(f)(1). One of the listed types of information is "[i]nformation marked by the contractor as 'contractor bid or proposal information,' in accordance with applicable law or regulation." Id.

Plaintiff had submitted certain resumes listing the qualifications of ATSCC employees as part of the previous procurement process and those resumes did appear to be marked with a legend in accordance with FAR 52.215-1(e). See Pl.'s Resp. 23. Importantly, however, the resumes did not contain the names and contact information for ATSCC employees. See id. at 23 & n.3. Therefore, the names and e-mail addresses of the ATSCC employees do not fall within the PIA definition of "contractor bid or proposal information." ATSCC employee names and e-mail addresses were not "submitted to a Federal agency as part of or in connection with a bid or proposal to enter into a Federal agency procurement contract." See 41 U.S.C. § 423(f)(1). Even if the employees' names

19

and e-mail addresses had been submitted, it is not clear that the employees' names and contact information had not previously been made available to the public or disclosed publicly in the course of their employment as medical instructors at JSOMTC.

Further, even if the resumes that were submitted by ATSCC could somehow be viewed as falling within the PIA definition of "contractor bid or proposal information," the AR does not contain evidence that CW2 Cervantes had access to the resumes. See, e.g., AR 315-16 (stating that CW2 Cervantes did not provide Mr. Sharp with any names, resumes, or contact information for ATSCC employees and that Mr. Boyington provided only names and e-mail addresses). It appears that CW2 Cervantes was not employed in the contracting office and was not responsible for conducting the procurement. See Compl. ¶ 24; Pl.'s Reply 15 (criticizing the thoroughness of the Army Reg. 15-6 investigation because it focused on CW2 Cervantes without "look[ing] into any potential involvement of the [c]ontracting [o]ffice"). More likely than not, CW2 Cervantes was able to obtain the names and e-mail addresses of the ATSCC medical instructors because he is "currently stationed at the U.S. Army John F. Kennedy Special Warfare Center and School under the Department of Training Directorate, which is the parent command to the JSOMTC." See Compl. ¶ 24. In the court's view, the government's contention that "[a]nyone with access to the training facility could have obtained the instructors' names, and anyone could have discovered the e[-]mail addresses," Def.'s Resp. 9, provides a reasonable explanation that is entirely inconsistent with a finding that a PIA violation occurred in this case.

b.     Contracting Office

Plaintiff argues that the Army investigation of CW2 Cervantes was incomplete and did not fully address its allegations of PIA violations because the investigation focused only on CW2 Cervantes and not on staff members within the contracting office. Pl.'s JAR Mot. 31; Pl.'s Reply 15-16. According to plaintiff, "[t]he closest the investigation came to inquiring as to whether or not the procurement officials acted in violation of the PIA was in an interview with LTC Sean K. Lee." Pl.'s Reply 15. LTC Lee described himself as "the chair person of the new contract for medical instructors," and the investigator referred to him as the Contracting Officer's Representative. Id. (citing AR 344-45). "The AR is not clear if LTC Lee works for the [c]ontracting office, but ATSCC does not believe that is the case." Pl.'s Reply 15 n.4.

Plaintiff argues that "the qualifications of the personnel were known, or were available to the Contracting Officer as the award was made based partially on a technical proposal which included several of their resumes." Pl.'s JAR Mot. 31. As explained in Part III.B.2.a., the names and contact information of ATSCC employees were not

included on the resumes that were submitted with the ATSCC technical proposal, see Pl.'s Resp. 23 n.3, and do not fall within the PIA definition of "contractor bid or proposal information," see 41 U.S.C. § 423(a), (f)(1). Plaintiff has not pointed to evidence that staff members within the contracting office were in any way involved in the release of ATSCC employee information. See Pl.'s Resp. 24; Pl.'s Reply 16. In response to plaintiff's January 2010 letter, the Contracting Officer denied any wrongdoing, stating:

> I have reviewed 41 USC § 423 and FAR 3.104-2 and 3.104-3 and do not agree with ATSCC's assertions. These statute and regulation sections deal with releasing contractor information and with government employees involved in the contracting process either seeking employment or being offered employment by a contractor during the contracting process. Here, we are not disclosing any contractor information. There is also no indication that any government employee is contacting or has been contacted by a potential contractor with regard to employment.

AR 348. The Contracting Officer further noted that the posting of contractor information visible to current employees under Amendment 0001 "seems to be consistent with Executive Order 13495, which requires contractors who are successful bidders on a government contract to offer employment to the work force that would otherwise be displaced." Id. Additionally, the Army Reg. 15-6 investigation was initiated in response to the allegations made by ATSCC. AR 293. The Army Reg. 15-6 investigation focused on CW2 Cervantes and his company CASG as the most likely source of the released information and did not find that any PIA violation occurred. See AR 287-89, 293. There is no basis to find that the ATSCC employee information was released from the contracting office. Plaintiff has presented no allegations supported, or even suggested, by the AR that would justify a conclusion that staff members within the contracting office committed a PIA violation.

IV.    Remedy

Section 1491(b)(2) of title 28 of the United States Code provides the court with discretion in awarding relief in a bid protest case: "To afford relief in such an action, the courts may award any relief that the court considers proper, including declaratory and injunctive relief except that any monetary relief shall be limited to bid preparation and proposal costs." 28 U.S.C. § 1491(b)(2). Section 1491(b)(3) further instructs: "In exercising jurisdiction under this subsection, the courts shall give due regard to the interests of national defense and national security and the need for expeditious resolution of the action." Id. § 1491(b)(3). The APA provides that an agency's decision is to be set

aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

Before a court may grant a permanent injunction, a plaintiff seeking such relief must satisfy a four-factor test. eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006). In deciding whether to award injunctive relief, a court considers: "(1) whether, as it must, the plaintiff has succeeded on the merits of the case; (2) whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief; (3) whether the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief." PGBA, LLC v. United States, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004).

Plaintiff seeks both declaratory and injunctive relief in this case. Specifically, plaintiff requests that the court "declare the actions of the [a]gency in setting aside the RFP for a competitive 8(a) procurement to be unlawful," "declare the actions of the [a]gency to be in violation of the Procurement Integrity Act," and "order [d]efendant, through its executive agency, the Army, to conduct a proper survey of qualified 8(a) contractors, and if fewer than two are presently available, to conduct this procurement as a small business set[-]aside or an unrestricted procurement." Compl. 10. Plaintiff also requests that it be awarded "reasonable attorney fees and costs, and such further relief as [the court] deems fair and just." Compl. 11.

The court declines to grant a permanent injunction and other relief sought by plaintiff because plaintiff has not succeeded on the merits of this case. As discussed in Part III, the agency's 8(a) set-aside decision was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, and the court cannot conclude that any PIA violation occurred.

V.      Conclusion

For the foregoing reasons, the court DENIES plaintiff's Motion for Preliminary and Permanent Injunction and DENIES plaintiff's Motion for Judgment on the Administrative Record. Defendant's Motion for Judgment upon the Administrative Record is GRANTED. The Clerk of Court shall ENTER JUDGMENT dismissing the Complaint. No costs.

IT IS SO ORDERED.

s/ Emily C. Hewitt
EMILY C. HEWITT
Chief Judge